NOTICE

Decision filed 10/29/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 210136-U

NO. 5-21-0136

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* ROY T., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Christian County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 17-JA-15 |
| v. | ) | |
| | ) | |
| Tiffany M., | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's findings that respondent-mother was unfit because of her inability to discharge parental responsibilities due to mental impairment, mental illness, intellectual disability, or developmental disability are affirmed where the findings are not against the manifest weight of the evidence.

¶ 2   Respondent, Tiffany M., appeals the trial court order terminating her parental rights to Roy T., stating the trial court's finding of unfitness was in error. For the following reasons, we affirm the trial court's decision.[1]

_____

[1]This is an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Rule 311(a)(5) provides in relevant part that "[e]xcept for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, the 150-day period expired on October 11, 2021. However, the State requested two briefing extensions and Tiffany requested one. The requests were granted, and the briefing schedule was extended

¶ 3                     I. BACKGROUND

¶ 4     Roy T. was born November 20, 2016. On February 27, 2017, the State filed a two-count petition for adjudication of wardship. Count I alleged that Roy T. was neglected in that his environment was injurious to his welfare due to domestic violence issues between Roy T.'s parents. Count II alleged Roy T. was neglected in that his environment was injurious to his welfare due to cognitive delays of Tiffany, his mother. At the shelter care hearing, the trial court found the removal of Roy T. from the parents and placement of Roy T. in the temporary custody of the Department of Children and Family Services (DCFS) to be a matter of reasonable and urgent necessity for the protection of Roy T. The court further found reasonable efforts could not eliminate or prevent the necessity of Roy T.'s removal and placement. At the November 29, 2017, adjudicatory hearing, Tiffany stipulated to an amended count II of the petition which alleged Roy T. was neglected in that he was under the age of 18 and his environment was injurious to his welfare in that Tiffany had cognitive delays as noted by the court, and the court had previously granted plenary guardianship of Tiffany to her parents. At the time of these proceedings, there was no longer a guardianship for Tiffany in place. Also, on November 29, 2017, the trial court granted Roy T.'s foster parents leave to intervene, without objection.

¶ 5     On December 27, 2017, the first psychological evaluation pertaining to Tiffany was completed and thereafter filed with the court. On January 24, 2018, the trial court entered an agreed dispositional order granting custody and guardianship of Roy T. to DCFS and setting a goal of return home within 12 months. On July 18, 2018, the trial court held a permanency hearing. The

to October 22, 2021. The case was placed on the next available docket, which was October 27, 2021. Under these circumstances, we find good cause to issue our decision after the 150-day deadline.

goal remained return home within 12 months, but the caseworker informed the court the case would be proceeding to legal screening.

¶ 6    On July 16, 2019, the State filed its amended motion for termination of parental rights, alleging Tiffany was an unfit person to have Roy T. due to her inability to discharge her parental responsibilities based on a psychological evaluation and parental capacity assessment, and there was sufficient justification to believe that the inability to discharge parental duties would extend beyond a reasonable time period following the adjudication of the dependent minor under section 2-4 of the Juvenile Court Act of 1987 (705 ILCS 405/2-4 (West 2018)) and section 1(D)(p) of the Adoption Act (750 ILCS 50/1(D)(p) (West 2018)). On July 24, 2019, the trial court changed the goal to substitute care pending court determination of termination of parental rights. On August 28, 2019, the trial court ordered a second psychological evaluation for Tiffany. The report was filed with the court on March 10, 2020.

¶ 7    On September 17, 2020, the court conducted the fitness portion of the termination hearing. Dr. Joel Eckert, a licensed clinical psychologist, testified first for the State. He evaluated Tiffany on February 13, 2020, and spent roughly 1½ hours with her. Tiffany completed a battery of intellectual and academic achievement tests, after which Dr. Eckert determined that Tiffany exhibited mild range disability and had an I.Q. of 65. She also had difficulty following directions and making decisions. Dr. Eckert posited that out of a group of 100 people, Tiffany would "be the least capable of understanding the complexity of spoken language." Regarding Tiffany's vocabulary ability, Dr. Eckert testified Tiffany performed at the level of a child of the age of 9 years and 11 months, read on the fourth-grade level, and was not functionally literate. He opined that although he believed Tiffany loved her child, "she's incapable of offering at least minimally satisfactory comprehensive parenting for her child," and her condition would not change over time.

¶ 8    Dr. Michael Trieger, the initial clinical psychologist to examine Tiffany, testified he evaluated Tiffany in December 2017. He spent approximately 3½ hours with Tiffany over the course of two appointments, in which she participated in a battery of tests. Dr. Trieger determined Tiffany's I.Q. to be 64. He opined Tiffany had a significant cognitive disability that was not likely to change over time and she likely would not get better. Dr. Trieger gave his opinion, within a reasonable degree of medical certainty, that Tiffany had a "poor prognosis for being able to acquire the skills necessary to safely care for her child." After Dr. Trieger's testimony, the hearing was halted because Tiffany expressed her wish to execute a final and irrevocable consent to adoption to a specified person or persons. The trial court set the case for December 4, 2020, to allow for the logistics to occur. However, on December 4, 2020, Tiffany's attorney announced that Tiffany no longer wanted to execute a consent. The fitness portion resumed on that day.

¶ 9    Joel Jackle-Hugh testified that he was employed by Kemmerer Village, an organization that contracts with DCFS to assist with the implementation of service plans for families, and had served as the caseworker for Roy T. since April 30, 2019. He further testified that when he took over the case, he reviewed the reports and notes of previous caseworkers to bring him up to speed. Jackle-Hugh testified that while Tiffany demonstrated that she could perform basic parenting skills, she had to have continual assistance doing so. He opined that even though Tiffany completed her services, she had shown little to no improvement in her parenting abilities over the four-year lifespan of the case. Jackle-Hugh testified that due to this lack of improvement, Tiffany's visitation with the child never increased.

¶ 10    Tiffany testified on her own behalf. She averred that she cared for Roy T. for the first three months of his life and currently had a bedroom set up for Roy T. in anticipation of his return to her care. She worked at McDonald's, paid her own bills, and prepared her own food. She had been in

4

a dating relationship with C.S. for seven months. Tiffany received disability benefits, but she did not know the nature of her disability. She also did not have a driver's license.

¶ 11     C.S. testified that he and Tiffany were in a romantic relationship. Tiffany would cook for him. He further testified he had a child and Tiffany interacted with and verbally disciplined the child appropriately. C.S.'s parents had custody of his child.

¶ 12     On January 28, 2021, the trial court issued its written ruling finding Tiffany unfit because of an inability to discharge parental responsibilities due to mental impairment, mental illness, intellectual disability, or developmental disability under section 1(D)(p) of the Adoption Act (750 ILCS 50/1(D)(p) (West 2018)). On April 15, 2021, the trial court conducted the best interest portion of the termination hearing.[2]

¶ 13     The trial court entered its judgment orally on the record and by docket entry, finding it to be in Roy T.'s best interest to terminate Tiffany's parental rights. On May 5, 2021, the trial court issued its written order for termination of parental rights of mother. Tiffany filed her notice of appeal on May 14, 2021.

¶ 14                                   II. ANALYSIS

¶ 15     On appeal, Tiffany argues that the trial court erred in deeming her unfit. She avers the findings were not supported by clear and convincing evidence of an inability to discharge parental responsibilities due to mental impairment, mental illness, intellectual disability, or developmental disability under section 1(D)(p) of the Adoption Act (*id.*).

---

[2]Although Tiffany inferred in her appellant's brief table of contents that she was contesting the efficacy of the trial court's findings pertaining to best interest, she does not cite any legal authority nor make any coherent argument in support of such a proposition. Accordingly, Tiffany has forfeited consideration of any such argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for rehearing). Thus, the testimony from the best interest portion of the termination hearing is not addressed.

¶ 16    "The standard of proof applied by a trial court when determining parental fitness is clear

and convincing evidence." *In re A.F.*, 2018 IL App (3d) 170826, ¶ 14. Clear and convincing

evidence is said to be something more than a preponderance of the evidence but less than proof

beyond a reasonable doubt. *In re D.T.*, 212 Ill. 2d 347, 362 (2004). "To be content with less than

'clear and convincing evidence' would counteract the higher evidentiary standard that ensures that

parents' fundamental rights to their children will not be improperly terminated." *In re Cornica J.*,

351 Ill. App. 3d 557, 570 (2004); see also *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). "A trial

court's finding of unfitness is afforded great deference because it has the best opportunity to view

and evaluate the parties and their testimony; the trial court's finding will not be disturbed on appeal

unless it is against the manifest weight of the evidence." *In re Daphnie E.*, 368 Ill. App. 3d 1052,

1064 (2006); *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002). A decision is against the manifest weight

of the evidence only where the opposite result is clearly evident from the record. *In re A.W.*, 231

Ill. 2d 241, 254 (2008). The reviewing court "will not reweigh the evidence or reassess the

witnesses' credibility." *In re M.A.*, 325 Ill. App. 3d 387, 391 (2001).

¶ 17    Section 1(D)(p) of the Adoption Act provides:

> "D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following, except that a person shall not be considered an unfit person for the sole reason that the person has relinquished a child in accordance with the Abandoned Newborn Infant Protection Act:

> * * *

> (p) Inability to discharge parental responsibilities supported by competent evidence from a psychiatrist, licensed clinical social worker, or clinical psychologist of mental impairment, mental illness or an intellectual disability as defined in Section 1-116 of the Mental Health and Developmental Disabilities Code, or developmental disability as defined in Section 1-106 of that Code, and there is sufficient justification to believe that the inability to discharge parental responsibilities shall

6

extend beyond a reasonable time period. However, this subdivision (p) shall not be construed so as to permit a licensed clinical social worker to conduct any medical diagnosis to determine mental illness or mental impairment." 750 ILCS 50/1(D)(p) (West 2020).

¶ 18    "In order to prove a parent unfit under section 1(D)(p) of the Act, the State must (1) present competent evidence that the parent suffers from a mental impairment, mental illness, or [an intellectual disability] sufficient to prevent the discharge of normal parental responsibilities; and (2) present sufficient evidence to conclude that the inability will extend beyond a reasonable time period." *In re Cornica J.*, 351 Ill. App. 3d at 566.

¶ 19    In this case, ample evidence was presented from which the trial court could find by clear and convincing evidence that Tiffany was unfit to parent Roy T. due to an inability to discharge parental duties because of mental impairment, mental illness, an intellectual disability, or developmental disability, and such inability to discharge parental responsibilities would extend beyond a reasonable time period. Tellingly, two separate clinical psychologists completed psychological exams almost three years apart. The psychologists' findings were nearly identical. Both agreed Tiffany was unable to parent Roy T. safely and effectively and that the nature of her disability made it unlikely that she would ever improve. In fact, there was no measurable improvement in between the two psychological exams. The caseworker's testimony buttressed those findings, as he had observed no significant improvement in Tiffany's ability to parent over the four-year life span of the case.

¶ 20    Tiffany's reliance on *In re Cornica J.* to support her position is equally unavailing as that case is distinguishable. *Id.* at 570. In *In re Cornica J.*, the testifying psychologist was the State's lone witness and a number of her findings were contradicted by four independent witnesses. *Id*. In the case now before this court, the State provided a wealth of evidence—two clinical psychologists' opinions, with nearly identical findings over a three-year period, as well as the

7

caseworker's testimony supporting those opinions. We find sufficient evidence to support the trial court's finding of unfitness and find the trial court's decision not to be against the manifest weight of the evidence. While we note Tiffany's testimony as to her care before the case commenced and her boyfriend's testimony that Tiffany appropriately interacts with and disciplines his child, it is not our place to reweigh the evidence. *In re M.A.*, 325 Ill. App. 3d at 391.

¶ 21    The opposite conclusion of that reached by the trial judge is not clearly evident in this case, and the trial judge's decision is not unreasonable, arbitrary, or not based on the evidence. Accordingly, the trial court's finding of unfitness is affirmed.


¶ 22    Affirmed.